T.C. Memo. 2006-72

UNITED STATES TAX COURT

STEPHEN DARYL ROYAL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19001-04.                Filed April 11, 2006.

Stephen Daryl Royal, pro se.

<u>Bradley C. Plovan</u>, for respondent.


MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a $5,324 deficiency
in, and a $1,065 accuracy-related penalty under section 6662(a)[1]
on, petitioner's Federal income tax (tax) for his taxable year

_____

[1]All section references are to the Internal Revenue Code in
effect for the year at issue.  All Rule references are to the Tax
Court Rules of Practice and Procedure.

2002. The issues remaining for decision are:[2]

(1) Is petitioner required to include $25,940.49 in his gross income for his taxable year 2002? We hold that he is.

(2) Is petitioner entitled for his taxable year 2002 to the earned income tax credit? We hold that he is not.

## Background

Virtually all of the facts have been stipulated by the parties and are so found.

At the time petitioner filed the petition in this case, his legal residence was in Baltimore City, Maryland.

During 2002, petitioner was an employee of the U.S. Postal Service (Postal Service) until he retired in that year because of disability.

The U.S. Office of Personnel Management (OPM) approved petitioner's retirement from the Postal Service because of disability. In a letter dated July 29, 2002, OPM advised petitioner as follows:

> Your application for disability retirement has been approved.
>
> According to information we have received from your agency, you have not been separated from Government service. Therefore, we are notifying your agency of the approval and asking them to separate you. We are asking them to give us your last day of pay. Payment of annuity cannot start until after your last day of pay. If you have sick leave remaining, the last day of pay will be the day your sick leave is exhausted. We

---

[2]At trial, petitioner conceded the accuracy-related penalty under sec. 6662(a) that respondent determined.

are asking your agency to send us your final separation records so we can establish your final annuity rate.

We cannot start your annuity payments until we receive confirmation that you have applied for Social Security disability benefits.  If you have not already done so, you must now apply for them.  Please send us a copy of the receipt (or notice of allowance or disallowance) which you receive from the Social Security Administration after you file the application.

If the Social Security Administration awards you monthly benefits, you must also notify OPM of the amount of the monthly Social Security benefit and effective date of payment immediately upon becoming eligible * * *.

During petitioner's employment with the Postal Service, he made contributions to a retirement account (petitioner's TSP retirement account) that he maintained with the Federal Thrift Savings Plan.[3]  At a time or times not disclosed by the record, petitioner borrowed money from petitioner's TSP retirement account.  When petitioner retired from the Postal Service in 2002, he had the following two loans from that account outstanding (collectively, petitioner's loans):  Loan number 0130267-E in the amount of $10,477.89 (petitioner's $10,477.89 loan) and loan number 9800963-R in the amount of $15,462.60 (petitioner's $15,462.60 loan).[4]

---

[3]The record does not disclose the terms of the Federal Thrift Savings Plan in which petitioner participated while he was an employee of the Postal Service.

[4]The record does not disclose the respective terms of petitioner's loans.

Petitioner was sent a notice dated September 4, 2002, with respect to each of petitioner's loans. Such notice informed petitioner that he was required to repay in full by December 3, 2002, the loan to which such notice pertained and that if he did not do so, a taxable distribution would be declared with respect to the unpaid principal and unpaid interest to September 16, 2002, with respect to such loan. Petitioner did not repay petitioner's loans.

On September 23, 2002, the Federal Thrift Savings Plan sent petitioner two letters (collectively, September 23, 2002 letters), one of which pertained to petitioner's $10,477.89 loan (September 23, 2002 letter pertaining to petitioner's $10,477.89 loan) and the other of which pertained to petitioner's $15,462.60 loan (September 23, 2002 letter pertaining to petitioner's $15,462.60 loan). The September 23, 2002 letter pertaining to petitioner's $10,477.89 loan stated in pertinent part:

> You were sent a notice dated 09/04/02, informing you that, because you separated after your Thrift Savings Plan (TSP) loan was issued, you must repay your loan in full by 12/03/02, or a taxable distribution would be declared. Because you forfeited your right to repay the loan in full, effective 09/16/02, a taxable distribution in the amount of $10,477.89 has been declared in connection with the unpaid principal and unpaid interest to 09/16/02, on * * * [petitioner's $10,477.89] loan.

The September 23, 2002 letter pertaining to petitioner's $15,462.60 loan stated in pertinent part:

> You were sent a notice dated 09/04/02, informing you

that, because you separated after your Thrift Savings Plan (TSP) loan was issued, you must repay your loan in full by 12/03/02, or a taxable distribution would be declared.  Because you forfeited your right to repay the loan in full, effective 09/16/02, a taxable distribution in the amount of $15,462.60 has been declared in connection with the unpaid principal and unpaid interest to 09/16/02, on * * * [petitioner's $15,462.60] loan.

Both September 23, 2002 letters further advised petitioner:

This amount [of taxable distribution declared] will be reported as taxable income for 2002.  You may also be liable for a tax penalty on this amount due to an early withdrawal.  Because your Federal income tax liability may be affected by this distribution and/or tax penalty, you may wish to adjust your withholding amounts accordingly.  In certain circumstances, you can roll all or any portion of an amount equal to this distribution over into an Individual Retirement Arrangement (IRA) or other eligible plan and avoid current taxation.  You should consult with your tax advisor concerning taxation of this distribution.

You will be sent the appropriate tax form by January 31, 2003.  The Internal Revenue Service will be sent a notice of this distribution by February 28, 2003, as required by law.

At no time after petitioner retired from the Postal Service did he open an individual retirement account.

Petitioner filed Form 1040A, U.S. Individual Income Tax Return, for his taxable year 2002 (petitioner's 2002 return).  In that return, petitioner showed his occupation as "Retired" and claimed (1) head of household filing status, (2) his two children as dependents, and (3) the earned income tax credit.  In petitioner's 2002 return, petitioner reported wages of $12,703.22, "Pensions and annuities" of $33,118.49, of which he claimed only

$7,178 was taxable, unemployment compensation of $4,403, total income of $24,284.22, and adjusted gross income of $24,284.22. Attached to petitioner's 2002 return were, inter alia: (1) Form CSA 1099R, Statement of Annuity Paid, for 2002 issued to petitioner by OPM Retirement Programs that showed a gross annuity amount of $7,178, tax withheld of $630, original contributions of $4,110, and taxable annuity "UNKNOWN" and (2) Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for 2002 issued to petitioner by the Federal Thrift Savings Plan (TSP Form 1099-R) that showed a gross distribution of $25,940.49, a taxable amount of $25,940.49, and employee contributions or insurance premiums of $0.

Respondent issued a notice of deficiency (notice) to petitioner for his taxable year 2002. In the notice, respondent determined for that year that petitioner must include in his gross income $25,940.49, the total amount of petitioner's loans, that he is not entitled to the earned income tax credit, and that he is liable for the accuracy-related penalty under section 6662(a).

## Discussion

Although respondent must have commenced respondent's examination of petitioner's 2002 return after July 22, 1998, the parties do not address section 7491(a). On the record before us,

we find that petitioner has failed to carry his burden of establishing that he satisfied the applicable requirements of section 7491(a)(2). On that record, we conclude that petitioner has the burden of proof with respect to the issues that remain in this case.[5] See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

<u>Petitioner's Loans</u>

The Federal Thrift Savings Plan in which petitioner participated while he was an employee of the Postal Service is treated as a qualified trust described in section 401(a)[6] that is exempt from taxation under section 501(a). Sec. 7701(j)(1)(A). Any contribution to, or distribution from, the Federal Thrift Savings Plan is treated in the same manner as contributions to, or distributions from, such a trust. Sec. 7701(j)(1)(B).

For purposes of section 72, if during any taxable year a participant receives directly or indirectly any amount as a loan from a qualified employer plan, such amount generally is to be treated as having been received by such individual as a distribution from such plan. Sec. 72(p)(1)(A). For purposes of section 72(p), the term "qualified employer plan" means, inter alia, a plan described in section 401(a) that includes a trust exempt

---

[5]See <u>supra</u> note 2.

[6]Sec. 401(a) sets forth the requirements for a qualified stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries.

from taxation under section 501(a).  Sec. 72(p)(4)(A)(i)(I).

Section 72(p)(2) sets forth an exception to the general rule of section 72(p)(1)(A).  Section 72(p)(2) provides in pertinent part:

> SEC. 72.  ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.
>
>    *      *      *      *      *      *      *
>
>     (2)  Exception for certain loans.--
>
>        (A) General rule.--Paragraph (1) [of section 72(p)] shall not apply to any loan to the extent that such loan (when added to the outstanding balance of all other loans from such plan whether made on, before, or after August 13, 1982), does not exceed the lesser of--
>
>           (i) $50,000, reduced by the excess (if any) of--
>
>              (I) the highest outstanding balance of loans from the plan during the 1-year period ending on the day before the date on which such loan was made, over
>
>              (II) the outstanding balance of loans from the plan on the date on which such loan was made, or
>
>           (ii) the greater of (I) one-half of the present value of the nonforfeitable accrued benefit of the employee under the plan, or (II) $10,000.
>
>     For purposes of clause (ii), the present value of the nonforfeitable accrued benefit shall be determined without regard to any accumulated deductible employee contributions (as defined in subsection (o)(5)(B)).
>
>        (B) Requirement that loan be repayable within 5 years.--

(i) In general.--Subparagraph (A) shall not apply to any loan unless such loan, by its terms, is required to be repaid within 5 years.

\*     \*     \*     \*     \*     \*     \*

(C) Requirement of level amortization.--Except as provided in regulations, this paragraph shall not apply to any loan unless substantially level amortization of such loan (with payments not less frequently than quarterly) is required over the term of the loan.

The record does not disclose when petitioner borrowed the money from petitioner's TSP retirement account that was evidenced by petitioner's loans. Nor does the record disclose the respective terms of those loans or the terms of the Federal Thrift Savings Plan in which petitioner participated while he was an employee of the Postal Service. The Court is unable to determine from the instant record whether each of petitioner's loans qualified for the exception under section 72(p)(2). Nonetheless, it appears that each of those loans did so qualify. In this connection, the respective September 23, 2002 letters pertaining to petitioner's $10,477.89 loan and petitioner's $15,462.60 loan that the Federal Thrift Savings Plan sent to petitioner stated in pertinent part:

You were sent a notice dated 09/04/02, informing you that, because you separated after your Thrift Savings Plan (TSP) loan was issued, you must repay your loan in full by 12/03/02, or a taxable distribution would be declared. Because you forfeited your right to repay the loan in full, effective 09/16/02, a taxable distribution * * * has been declared in connection with the unpaid principal and unpaid interest to 09/16/02 * * *.

If petitioner's loans did not qualify for the exception under section 72(p)(2), the Federal Thrift Savings Plan probably would have notified petitioner that each such loan was to be treated when made as a distribution from petitioner's TSP retirement account. See sec. 72(p)(1)(A). In that event, the Federal Thrift Savings Plan would not have sent petitioner the respective September 23, 2002 letters pertaining to petitioner's $10,477.89 loan and petitioner's $15,462.60 loan. It appears from those letters that petitioner's loans qualified for the exception under section 72(p)(2) and that, when petitioner did not repay each of petitioner's loans as directed by the Federal Thrift Savings Plan, the Federal Thrift Savings Plan made a distribution from petitioner's TSP retirement account of an amount to discharge or offset the outstanding balance of each such loan.[7] Cf. Duncan v. Commissioner, T.C. Memo. 2005-171; sec. 1.72(p)-1, Q&A-13(a)(1) and (2) and (b), Income Tax Regs. Those regulations, effective for loans made on or after January 1, 2002, provide:

---

[7]TSP Form 1099-R showed that in 2002 the Federal Thrift Savings Plan made a gross distribution to petitioner of $25,940.49, all of which was taxable. In petitioner's 2002 return, petitioner reported "Pensions and annuities" of $33,118.49, of which he included only $7,178 in his gross income. The difference between "Pensions and annuities" of $33,118.49 that petitioner reported in petitioner's 2002 return and $7,178 of such pensions and annuities that petitioner included in his gross income equals $25,940.49, the total amount of (1) petitioner's loans outstanding at the time of his retirement from the Postal Service in 2002 and (2) the taxable distribution to petitioner reported in TSP Form 1099-R.

Q-13:  How does a deduction (offset) of an account balance in order to repay a plan loan differ from a deemed distribution?

A-13:  (a) <u>Difference between deemed distribution and plan loan offset amount</u>.--(1) Loans to a participant from a qualified employer plan can give rise to two types of taxable distributions--

(i) A deemed distribution pursuant to section 72(p); and

(ii) A distribution of an offset amount.

(2) As described in Q&A-4 of this section, a deemed distribution occurs when the requirements of Q&A-3 of this section are not satisfied, either when the loan is made or at a later time.  A deemed distribution is treated as a distribution to the participant or beneficiary only for certain tax purposes and is not a distribution of the accrued benefit.  A distribution of a plan loan offset amount (as defined in § 1.402(c)-2, Q&A-9(b))[8] occurs when, under the terms governing a

---

[8]Sec. 1.402(c)-2, Q&A-9, Income Tax Regs., describes a distribution of a planned loan offset amount as follows:

Q-9:  What is a distribution of a plan loan offset amount * * *?

*       *       *       *       *       *       *

A-9:  (b) <u>Definition of plan loan offset amount</u>. For purposes of section 402(c), a distribution of a plan loan offset amount is a distribution that occurs when, under the plan terms governing a plan loan, the participant's accrued benefit is reduced (offset) in order to repay the loan (including the enforcement of the plan's security interest in a participant's accrued benefit).  A distribution of a plan loan offset amount can occur in a variety of circumstances, e.g., where the terms governing a plan loan require that, in the event of the employee's termination of employment or request for a distribution, the loan be repaid immediately or treated as in default.  A distribution of a plan loan offset amount also occurs when, under the

(continued...)

plan loan, the accrued benefit of the participant or beneficiary is reduced (offset) in order to repay the loan (including the enforcement of the plan's security interest in the accrued benefit). A distribution of a plan loan offset amount could occur in a variety of circumstances, such as where the terms governing the plan loan require that, in the event of the participant's request for a distribution, a loan be repaid immediately or treated as in default.

(b) <u>Plan loan offset</u>. In the event of a plan loan offset, the amount of the account balance that is offset against the loan is an actual distribution for purposes of the Internal Revenue Code, not a deemed distribution under section 72(p). * * *

<u>Id.</u>

On the record before us, we find that petitioner has failed to carry his burden of showing that he is not required to include $25,940.49 in his gross income for his taxable year 2002.

<u>Claimed Earned Income Tax Credit</u>

In petitioner's 2002 return, petitioner claimed the earned income tax credit. Section 32(a)(1) permits an eligible individual an earned income tax credit against such individual's tax liability. The earned income tax credit is calculated as a percentage of the individual's earned income. Sec. 32(a)(1). Section 32(a)(2) limits the credit allowed. Section 32(b)

---

[8](...continued)
terms governing the plan loan, the loan is cancelled, accelerated, or treated as if it were in default (e.g., where the plan treats a loan as in default upon an employee's termination of employment or within a specified period thereafter). A distribution of a plan loan offset amount is an actual distribution, not a deemed distribution under section 72(p).

prescribes different percentages and amounts that are to be used to calculate the credit depending on whether the eligible individual has no qualifying children, one qualifying child, or two or more qualifying children. Respondent does not dispute that petitioner's daughters that he claimed as dependents in petitioner's 2002 return are qualifying children for purposes of the earned income tax credit.

For taxable year 2002, the earned income tax credit is completely phased out if an individual who has two qualifying children and who is not married filing jointly[9] has adjusted gross income that equals or exceeds $33,178. See sec. 32(b)(1)(A) and (2); Rev. Proc. 2001-59, 2001-2 C.B. 623, 625-626. In petitioner's 2002 return, petitioner claimed adjusted gross income of $24,284.22. We have held that petitioner must include $25,940.49 in his gross income for 2002. As a result, petitioner's adjusted gross income for that year is $50,224.71.

On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his taxable year 2002 to the earned income tax credit.

To reflect the foregoing and petitioner's concession,

Decision will be entered for

respondent.

---

[9]Petitioner claimed head of household filing status in petitioner's 2002 return.