T.C. Memo. 2006-95

UNITED STATES TAX COURT

THEODUS J. JORDAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14018-04.                    Filed May 8, 2006.

Theodus J. Jordan, pro se.

Michael R. Fiore, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  Respondent determined a $3,067 deficiency in petitioner's 2002 Federal income tax.  The primary issues for decision for petitioner's taxable year 2002 are:  (1) Whether petitioner is entitled under section 2(b) to head of household filing status; (2) whether petitioner is entitled under section 151 to a dependency exemption deduction for his son; (3) whether

petitioner is subject to the section 72(t) 10-percent additional tax on premature distributions from a section 403(b) annuity contract; and (4) whether petitioner may claim credit against his 2002 tax liability for certain of petitioner's tax payments that the Treasury Department applied in 2002 to nontax Federal debt that petitioner allegedly owed to the United States Department of Education (DOE).[1]

### FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein. When he filed his petition, petitioner resided in Jamaica Plain, Massachusetts.

Petitioner has a son, Tyrone, who was born in 1971. Petitioner divorced Tyrone's mother in 1972. In 2002, Tyrone did not live with petitioner.

Petitioner was formerly employed by the Boston public school system. He participated in a tax-sheltered annuity plan under section 403(b). On Form 1099-R, Distributions from Pensions, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, Etc., Travelers Life & Annuity (Travelers) reported making to petitioner during 2002 gross annuity distributions of $6,481 and taxable distributions of $6,468. Of the $6,481 gross distributions, $5,381 represented the closure of petitioner's

---

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

prior loan against his annuity account; the remaining $1,100 represented a payment to petitioner in partial surrender of his annuity account. At the time of these distributions, petitioner was younger than age 59 1/2.

By letter dated April 26, 2002, the Department of the Treasury notified petitioner that the Internal Revenue Service had on that date applied petitioner's $1,738 "Federal payment" to offset petitioner's nontax Federal debt with DOE. The letter does not otherwise identify the source of the Federal payment.

On his 2002 Form 1040A, U.S. Individual Income Tax Return, dated March 2003, petitioner claimed head of household status. Petitioner listed Tyrone as the qualifying child and claimed Tyrone as a dependent.[2] On his Form 1040A, petitioner reported $6,468 of taxable annuity distributions and zero tax liability. On line 39 of his Form 1040A, petitioner reported $531 as "Federal income tax withheld". On line 40 of his Form 1040A, petitioner reported "1,725 (est)" as "2002 estimated tax payments

_____

[2] Petitioner listed Tyrone as his dependent on line 6c of his Form 1040A, U.S. Individual Income Tax Return, and also claimed on line 26 thereof $6,000 of exemptions that included a $3,000 dependency exemption for Tyrone. Inconsistently, on line 4 of Form 1040A, in claiming head of household status, petitioner listed Tyrone as a qualifying person "who is a child but not your dependent". Apparently on the basis of this latter representation, the parties have stipulated that petitioner did not claim Tyrone as his dependent for 2002. Because the stipulation is clearly contrary to the fact disclosed by the record that petitioner claimed the dependency exemption with respect to Tyrone, we shall disregard the stipulation. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).

and amount applied from 2001 return".[3]  On line 43, petitioner listed the $2,256 sum of lines 39 and 40 as his "total payments". Petitioner also incorrectly showed this sum on line 42 as an "Additional child tax credit" but did not otherwise reflect such an additional child tax credit in claiming the $2,256 overpayment, as reported on line 44.  Petitioner claimed "0" as the amount of earned income credit.

In the notice of deficiency, respondent determined that petitioner was liable for a 10-percent additional tax on premature distributions from a qualified retirement plan.  In addition, the notice of deficiency showed an increase in petitioner's tax liability of $2,256 resulting from the disallowance of an additional child tax credit and an increase of $25 resulting from a reduction of earned income credit.[4]

---

[3] Apparently, $1,725 was petitioner's estimate of the $1,738 that the Treasury Department had previously paid over to DOE.

[4] In the notice of deficiency, respondent also disallowed a $4,618 IRA deduction that petitioner claimed on his Form 1040A. Petitioner has not expressly raised this issue either in his petition, at trial, or on brief (other than to state generally on brief that he disagrees with "the remaining issues" in the notice of deficiency).  The parties have stipulated as to the correctness of amounts shown on lines 7 through 21 of a revised Form 1040A that is in evidence.  Line 17 of this revised Form 1040A shows zero as the amount of petitioner's IRA deduction.  We deem petitioner to have waived and conceded any claim of entitlement to the disallowed IRA deduction.  See, e.g., Rinn v. Commissioner, T.C. Memo. 2004-246.

## OPINION[5]

At the outset, we note that petitioner's testimony was in material respects highly unreliable and noncredible. For instance, petitioner initially testified that Tyrone is 8 years old. Shortly thereafter, petitioner introduced into evidence a divorce decree that indicated that Tyrone was 8 months old as of May 16, 1972. Petitioner then testified that Tyrone was born in 1976. Under questioning to corroborate that this would have made Tyrone 26 years old in 2002, petitioner changed his testimony to say that Tyrone was born in 1974. Upon observation that this would have made Tyrone 28 years old in 2002, petitioner responded that "I was not the best math student myself" before changing his testimony again to say that Tyrone was born in 1976. With regard to his own age, petitioner similarly gave inconsistent testimony, first testifying that he is now 51 years old and on cross examination testifying that he is now "fifty, fifty-four". We are not required to, and shall not, rely on petitioner's testimony with respect to the issues presented in this case (other than as an admission that petitioner was less than age 59 1/2 at the time of the annuity distributions). See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

---

[5] We decide this case on the basis of the evidence in the record without regard to the burden of proof. Accordingly, we need not and do not decide whether the burden-shifting rule of sec. 7491(a)(1) applies. See Higbee v. Commissioner, 116 T.C. 438 (2001).

Head of Household Filing Status

Section 1(b) grants a special tax rate for any individual who qualifies as filing as "head of household".  As pertinent here, "head of household" is defined in section 2(b) as an unmarried individual who maintains as his home a household that constitutes for more than one-half of the taxable year the principal place of abode for, inter alia, a son.  Sec. 2(b)(1)(A).  Petitioner has stipulated that Tyrone did not live with him during 2002.  Similarly, on his Form 1040A, petitioner indicated that Tyrone did not live with him.  Petitioner is not entitled to claim head of household filing status for 2002.

Dependency Exemption

At trial, petitioner insisted repeatedly that he had not claimed Tyrone as his dependent for 2002 and stated that he did not wish to claim Tyrone as his dependent.  Accordingly, respondent's brief does not address the dependency issue other than to note petitioner's concession.  In his answering brief, petitioner states incongruously that he "never conceded any such thing.  I never claimed him as dependent".  Petitioner contends that "he is entitle [sic] to an exemption for my son even though this petitioner never claim [sic] him as a dependent for 2002, or the last twenty-five years, as well."

Insofar as we are able to understand petitioner's position, he seems to believe that he is entitled to claim a $3,000

exemption with respect to Tyrone even though Tyrone is not his dependent. Petitioner is mistaken. Pursuant to section 151(a), a taxpayer is entitled to claim a dependency exemption only with respect to a dependent as defined in section 152. Respondent is sustained on this issue.

Annuity Distributions

On his Form 1040A, petitioner admitted receiving $6,468 of taxable distributions from his Travelers annuity account. In addition, petitioner has stipulated that these annuity distributions were taxable. Inconsistently, petitioner now contends that some, or possibly all, of the distributions were loans. The evidence, which includes petitioner's annuity surrender requests to Travelers and the Forms 1099-R prepared by Travelers, indicates that the distributions were not loans, but rather represented in part a payment in partial surrender of petitioner's annuity account and in part a loan closure, whereby a portion of petitioner's annuity balance was applied to discharge the loan, resulting in a taxable distribution. See Duncan v. Commissioner, T.C. Memo. 2005-171; cf. Royal v. Commissioner, T.C. Memo. 2006-72.

Section 72(t) imposes a 10-percent additional tax on premature distributions from a "qualified retirement plan", which is defined to include a section 403(b) annuity contract. Sec. 4974(c)(3). The additional tax does not apply to distributions

made on or after the date on which the taxpayer attained age 59 1/2. Sec. 72(t)(2)(A)(i). Petitioner did not attain age 59 1/2 in 2002. Petitioner has not alleged and the evidence does not suggest that any other exception under section 72(t)(2) applies.[6] Respondent is sustained on this issue.

Alleged Credit for Offset of Petitioner's Tax Payments

Petitioner claims credit against his 2002 tax liability for the $1,738 that the Treasury Department reported paying over to DOE in 2002.[7] Petitioner contends that this amount was paid over to DOE improperly because he had no outstanding debts with DOE.

The Treasury Department's payment to DOE was pursuant to section 6402(d), which generally requires the Secretary, upon notice from any Federal agency that a named person owes a "past-

_____

[6] On brief, petitioner argues for the first time that the 10-percent additional tax on the annuity distributions has already been paid by the "Retirement Board of the Teacher Association" upon a prior rollover of the annuity funds and that respondent is now attempting "to take the same amount again." We decline to consider this issue raised for the first time on brief, for to do so would result in surprise and prejudice to respondent. See Sundstrand Corp. v. Commissioner, 96 T.C. 226, 346-347 (1991); Seligman v. Commissioner, 84 T.C. 191, 198 (1985), affd. 796 F.2d 116 (5th Cir. 1986). In any event, petitioner's late-raised contention is contradicted by petitioner's own trial testimony that the "retirement board * * * didn't take out any" amount upon the prior rollover.

[7] On his Form 1040A, petitioner appears to have treated this amount (which he listed as "$1,725 (est.)") as an overpayment of his 2001 taxes to be credited against his 2002 estimated tax. Cf. sec. 301.6402-3(a)(5), Proced. & Admin. Regs. (explaining procedure whereby, in lieu of receiving a refund for a particular year, a taxpayer can instruct the IRS to credit his overpayment against the estimated tax for the immediately succeeding year).

due legally enforceable debt" to such agency, to reduce the amount of any "overpayment" payable to the person by the amount of such debt and pay this amount to the agency. The intercept takes precedence over petitioner's direction that the overpayment for 2001 be credited against his tax liability for 2002. See sec. 6402(d)(2); sec. 301.6402-6(g)(3), Proced. & Admin. Regs. Pursuant to section 6402(f), this Court lacks jurisdiction to restrain or review any reduction made by the Secretary under section 6402(d). Accordingly, we lack jurisdiction to consider petitioner's claim that the Treasury Department improperly paid over the $1,738 to DOE. See Wooten v. Commissioner, T.C. Memo. 2003-113.

On his Form 1040A, petitioner included $1,725 of the $1,738 offset amount, along with $531 of Federal income tax withheld, in claiming a $2,256 overpayment. In the notice of deficiency, respondent increased petitioner's deficiency by $2,256, with an explanation that this adjustment reflected the disallowance of an additional child tax credit. The parties have stipulated, however, that petitioner claimed no additional child tax credit for 2002. We treat this stipulation as a concession by respondent that the notice of deficiency erred by increasing

petitioner's deficiency to reflect the disallowance of a $2,256 additional child tax credit that petitioner never claimed.[8]

Having effectively conceded this error in the notice of deficiency, respondent attempts in this proceeding to sustain a portion of the $2,256 deficiency adjustment on a different ground. Specifically, respondent contends that petitioner's deficiency properly includes $1,725 attributable to petitioner's overstatement of estimated tax payments.[9] We disagree. The record does not disclose the source of the $1,738 intercepted Federal payment (which subsumes the $1,725 item in question). Because section 6402(d) authorizes the Secretary to pay over "any overpayment" to a Federal agency to discharge nontax debts, we infer that the payment the Treasury Department intercepted and paid over to DOE on April 26, 2002, was with respect to

---

[8] Similarly, the notice of deficiency included in petitioner's deficiency a $25 adjustment attributable to a reduction in the allowable amount of petitioner's earned income credit, even though petitioner claimed no earned income credit. In the Rule 155 computations, we expect respondent to make appropriate adjustment with respect to this item.

[9] This leaves unaccounted for $531 of the $2,256 deficiency adjustment. The parties have stipulated that petitioner is entitled to withholding credits of $531. We treat this stipulation as a concession by respondent that the deficiency should exclude any adjustment related to this $531 item. We further note that by definition a deficiency is determined without regard to the sec. 31 credit for tax withheld on wages. See sec. 6211(b)(1).

petitioner's overpayment for 2001.[10]  The disallowance of the credit that petitioner claimed with respect to this item does not affect the amount of petitioner's deficiency for 2002.  See sec. 6211(a) (defining a deficiency generally as the amount by which the correct tax exceeds the tax shown on the taxpayer's return, increased by prior assessments and reduced by rebates as defined in sec. 6211(b)(2)); cf. Terry v. Commissioner, 91 T.C. 85 (1988) (holding that an intercepted refund does not constitute a rebate for purposes of determining a deficiency).

We have considered all of petitioner's remaining contentions and find them to be without merit.  To reflect the foregoing and the parties' concessions,

Decision will be entered

under Rule 155.

---

[10] As of April 26, 2002, it could not have been determined whether petitioner had any overpayment with respect to taxable year 2002.