**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-84

UNITED STATES TAX COURT

DAVID C. MATTHEWS AND MARCIA K. MATTHEWS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28106-13S.                    Filed August 28, 2014.

David C. Matthews and Marcia K. Matthews, pro sese.

Edwin B. Cleverdon, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $19,469 in petitioners' Federal income tax for 2011 and an accuracy-related penalty under section 6662(a). Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, they resided in Alabama.

After concessions,[2] the issue remaining for decision is whether petitioners are liable for the 10% additional tax on early distributions from qualified retirement plans under section 72(t).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference.

---

[1](...continued)
Code (Code), as amended and in effect for 2011, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]Petitioners concede that they omitted from their return $2,580 of self-employment income. Respondent concedes that petitioners are not liable for an accuracy-related penalty under sec. 6662. Other adjustments are computational and flow from our decision in this case.

I. <u>Mr. Matthews' Employment</u>

From 2003 until September 2010 Mr. Matthews worked for Sparta, Inc., a defense contractor, in Huntsville, Alabama. During that time Mr. Matthews participated in Sparta's section 401(k) retirement savings plan (401(k) plan account) administered by Prudential Insurance Co. of America (Prudential).

In September 2010 Mr. Matthews left Sparta and accepted a position as a senior engineer with Synapse Wireless (Synapse). In March 2011, however, he was laid off.

Mrs. Matthews is primarily a homemaker. She has a background in education and home schools the couple's two children.

II. <u>Retirement Account Loan and Distributions</u>

Sometime before 2011 Mr. Matthews borrowed $36,278 from his 401(k) plan account. During 2011, shortly after losing his job with Synapse, Mr. Matthews requested a distribution of $128,140 from his 401(k) plan account. He understood that his loan would have to be repaid before he could receive a distribution from the account. In this regard, Prudential applied $36,278 of Mr. Matthews' accrued plan benefits to offset his outstanding loan, withheld Federal income tax of $18,372, and transferred $73,490 (the balance of the requested $128,140 distribution) to him.

After the transaction described above, Mr. Matthews had $66,629 remaining in his 401(k) plan account. He then rolled those funds over to a Prudential individual retirement account (IRA) and promptly requested a distribution of $55,000. Prudential withheld Federal income tax of approximately $9,000 and transferred the balance of $46,000 to Mr. Matthews.

Mr. Matthews was 49 years old in 2011. He explained at trial that he did not want to apply for unemployment compensation after losing his job with Synapse because he did not want to become a "burden on society" and that he was compelled to withdraw funds from his retirement accounts to pay the mortgage and support his family. The parties agree that Mr. Matthews withdrew funds from his retirement accounts to alleviate economic hardship.

III. Petitioners' 2011 Tax Return

Petitioners filed a Form 1040, U.S. Individual Income Tax Return, for 2011. The parties agree that petitioners had adjusted gross income (AGI) of $250,313 for 2011 and that they paid unreimbursed medical expenses of $9,189 that year. Petitioners did not report any additional tax due under section 72(t) in respect of the distributions from Mr. Matthews' retirement accounts described above.

Discussion

Petitioners do not dispute that the amounts distributed from Mr. Matthews'
retirement accounts during 2011 constitute gross income subject to Federal income
tax.  See secs. 61(a), (b), 72(a)(1), 402(a), 408(d)(1); see also Arnold v.
Commissioner, 111 T.C. 250, 253 (1998).  The only issue in dispute is whether the
distributions are subject to the 10% additional tax imposed by section 72(t).

As a general rule, if a taxpayer receives a distribution from a qualified
retirement plan before attaining the age of 59-1/2, section 72(t) imposes an
additional tax equal to 10% of the portion of the distribution which is includible in
the taxpayer's gross income.[3]  Sec. 72(t)(1) and (2).  The additional tax is intended
to discourage taxpayers from taking premature distributions from retirement
plans--actions that frustrate public policy encouraging saving for retirement.  See
Dwyer v. Commissioner, 106 T.C. 337, 340 (1996) (citing and discussing the
legislative history underlying section 408(f), the statutory predecessor to section
72(t)); Milner v. Commissioner, T.C. Memo. 2004-111.

Section 72(t)(2)(B) provides an exception to the imposition of additional tax
to the extent that retirement plan distributions "do not exceed the amount

---

[3]The definition of "qualified retirement plan" includes 401(k) plan accounts
and IRAs.  See secs. 72(t)(1), 401(a), (k)(1), 4974(c); Uscinski v. Commissioner,
T.C. Memo. 2005-124.

allowable as a deduction under section 213 to the employee for amounts paid during the taxable year for medical care (determined without regard to whether the employee itemizes deductions for such taxable year)." Section 213 in turn allows as a deduction "the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 7.5 percent of adjusted gross income."[4]

Petitioners' AGI for 2011 was $250,313, and they paid $9,189 in unreimbursed medical expenses that year. Because petitioners' unreimbursed medical expenses did not exceed $18,773 (7.5% of $250,313)--the floor for an allowable deduction under section 213--it follows that they are ineligible for the medical expense exception prescribed in section 72(t)(2)(B). See Dwyer v. Commissioner, 106 T.C. at 343; McGraw v. Commissioner, T.C. Memo. 2013-152.

Petitioners maintain that they should be excused from the additional tax prescribed in section 72(t) because Mr. Matthews was obliged to take the

---

[4]For taxable years beginning after December 31, 2012, sec. 213(a) provides that eligible medical expenses may be deducted to the extent they exceed 10% of AGI. See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 9013(a), 124 Stat. at 868.

distributions under consideration to alleviate economic hardship.  We have considered similar claims in the past and have observed that there is no authority in the Code, the legislative history, or caselaw for a general financial hardship exception to the imposition of the 10% additional tax on early distributions.  See Arnold v. Commissioner, 111 T.C. at 255; Dollander v. Commissioner, T.C. Memo. 2009-187; Milner v. Commissioner, T.C. Memo. 2004-111.  While we are sympathetic to petitioners' position, the Court may not add an exception to section 72(t) by judicial fiat, and we are obliged to apply the law as written.  See Iselin v. United States, 270 U.S. 245, 250-251 (1926).

As a final matter, petitioners contend that, inasmuch as they did not actually receive the $36,278 that Prudential applied to offset Mr. Matthews' outstanding loan, the additional 10% tax should not be applied in respect of that amount.  We disagree.

Under the general rule of section 72(p)(1)(A), the making of a loan from a qualified retirement plan gives rise to a deemed distribution that is taxable in the year in which the taxpayer receives the loan.  However, section 72(p)(2) provides an exception to the general rule for loans that satisfy certain requirements.[5]  The

---

[5]Sec. 72(p)(2) provides an exception where the following requirements are met:  (1) the loan does not exceed the lesser of the amount set forth in sec.

(continued...)

record does not disclose when Mr. Matthews took the loan from his 401(k) plan account or the respective terms of the loan or the 401(k) plan itself. Because the parties do not dispute that Mr. Matthews' loan satisfied the requirements of section 72(p)(2), we have no reason to delve into that matter.

Although a loan may initially satisfy the requirements of section 72(p)(2) at the time that it is made and be excepted from the general rule of section 72(p)(1)(A), a deemed distribution may nevertheless arise in accordance with section 1.72(p)-1, Q&A-4(a), Income Tax Regs., as the result of a failure of one of the aforementioned requirements, see Owusu v. Commissioner, T.C. Memo. 2010-186, or an actual distribution may occur in accordance with section 1.72(p)-1, Q&A-13(a) and (b), Income Tax Regs., in the event of a "plan loan offset", see Royal v. Commissioner, T.C. Memo. 2006-72.[6] Section 72(t) applies to a deemed

---

[5](...continued)
72(p)(2)(A)(i) or (ii); (2) the loan, by its terms, must be repaid within five years from the date of its inception or is made to finance the acquisition of a home which is the principal residence of the participant; and (3) the loan must have substantially level amortization with quarterly or more frequent payments required over the term of the loan. In addition, the loan must be evidenced by a legally enforceable agreement. Sec. 1.72(p)-1, Q&A-3(b), Income Tax Regs.

[6]Sec. 1.72(p)-1, Q&A-13(a)(2), Income Tax Regs., provides in relevant part:

A distribution of a plan loan offset amount (as defined in sec. 1.402(c)-2, Q&A-9(b)) occurs when, under the terms governing a

(continued...)

distribution under section 72(p) in the same manner as an actual distribution. Sec. 1.72(p)-1, Q&A-11(b), Income Tax Regs.

Mr. Matthews understood that his 401(k) plan account loan would have to be repaid before he would be permitted to take a distribution from the account in 2011. Although we cannot be entirely certain on this record, the circumstances strongly suggest that, as a consequence of Mr. Matthews' separation from Sparta or his request for a distribution, Prudential offset a portion of his accrued plan benefits to repay his loan as described in section 1.72(p)-1, Q&A-13(a) and (b), Income Tax Regs. As discussed above, a plan loan offset constitutes an actual plan distribution that is subject to additional tax under section 72(t) notwithstanding that the loan was taken in an earlier year. Petitioners have not

---

[6](...continued)
plan loan, the accrued benefit of the participant or beneficiary is reduced (offset) in order to repay the loan (including the enforcement of the plan's security interest in the accrued benefit). A distribution of a plan loan offset amount could occur in a variety of circumstances, such as where the terms governing the plan loan require that, in the event of the participant's request for a distribution, a loan be repaid immediately or treated as in default.

The amount of the account balance that is offset against a loan is an actual distribution as opposed to a deemed distribution under sec. 72(p). Sec. 1.72(p)-1, Q&A-13(b), Income Tax Regs.; see Royal v. Commissioner, T.C. Memo. 2006-72.

pointed to an exception to the application of section 72(t) in this instance, and we are aware of none.

In sum, despite petitioners' economic hardship, Mr. Matthews' distributions from his 401(k) plan account and IRA are subject to additional tax under section 72(t). Respondent's determination on this issue is sustained.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.